PEOPLE v BARNES

Docket No. 76275. Submitted February 20, 1985, at Detroit.—Decided October 7, 1985. Leave to appeal applied for.

Daniel Barnes, Jr., operated an automobile salvage yard for which he neither had a license nor maintained statutorily required records pertaining to transactions and inventory. Two Detroit police officers went to the salvage yard to check on a vehicle believed to have been involved in an insurance fraud scheme. That automobile checked out satisfactorily but, in a subsequent spot check of the premises, the officers found parts from three stolen automobiles. Barnes was charged in the Recorder's Court of Detroit with three counts of receiving and concealing stolen property with a value of more than $100. Defendant moved to suppress the evidence, alleging that it had been obtained by means of an unconstitutional search and seizure because the police officers did not have a search warrant authorizing them to search the defendant's premises. The motion was denied, Beverly A. Jasper, J. Following a jury trial, defendant was found not guilty on two of the counts but guilty on the third one and was sentenced. Defendant appealed. *Held:*

1. Searches without warrants are not unreasonable per se in pervasively regulated industries as long as certain conditions are met. The automobile salvage business is a pervasively regulated industry, and all the conditions necessary for finding the search without a warrant valid were met under the cirucmstances of this case.

2. The trial court did not err in instructing the jury as to the

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Searches and Seizures §§ 35-59.

See the annotations in the ALR3d/4th Quick Index under Search and Seizure.

[2] Am Jur 2d, Statutes §§ 271 *et seq.*

[3] Am Jur 2d, Trial §§ 1155-1162.

Inconsistency of criminal verdicts as between two or more defendants tried together. 22 ALR3d 717.

Inconsistency of criminal verdict as between different counts of indictment or information. 18 ALR3d 259.

Inconsistency of criminal verdict with verdict on another indictment or information tried at same time. 16 ALR3d 866.

presumption of knowledge on the part of a dealer that property he buys or receives is stolen if it has altered or obliterated identification numbers or if the dealer fails to inquire whether the seller or deliverer has a legal right to sell or deliver the merchandise or personal property.

3. The fact that the jury rendered inconsistent verdicts of acquittal on counts I and II and conviction on count III is of no consequence. Inconsistent verdicts are permissible in Michigan.

4. The trial court adequately instructed the jury as to the defense theory of the case.

Affirmed.

1. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — PERVASIVELY REGULATED INDUSTRIES.

A search without a warrant is unreasonable per se and violates both the Michigan Constitution and the United States Constitution unless the search is shown to be within an exception to the general rule; a search without a warrant falls within the pervasively regulated industry exception to the general rule where certain conditions are met, and in determining whether those conditions are met a court should consider (1) the existence of express statutory authorization of such searches and seizures, (2) the importance of the governmental interest, (3) the pervasiveness and longevity of regulation, (4) the inclusion in statutes and regulations of reasonable limitations on searches, (5) the government's need for flexibility in the time, scope, and frequency of inspections to achieve reasonable levels of compliance, (6) the degree of intrusion occasioned by the search, and (7) the degree to which implied consent to such searches is given as a condition of doing business.

2. STATUTES — JUDICIAL CONSTRUCTION.

Courts have a duty to construe statutes so as to avoid constitutional difficulties and in a manner that comports with a finding of constitutionality; where a statute otherwise would be unconstitutional, a narrowing construction should be given so as to render it constitutional if such is possible without doing violence to the Legislature's intent in enacting the statute.

3. CRIMINAL LAW — JURY — INCONSISTENT VERDICTS.

Inconsistent jury verdicts are permissible in Michigan.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baugh-*

man, Principal Attorney, Research, Training and Appeals, for the people.

*Joseph Freed,* for defendant.

Before: WAHLS, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

E. A. QUINNELL, J. Defendant was charged with three counts of receiving and concealing stolen property with a value of more than $100, MCL 750.535; MSA 28.803. Prior to trial he moved to suppress the evidence, alleging that it had been obtained by means of an unconstitutional search and seizure. His pretrial motion was denied. At trial, he was found not guilty of the first two counts, but guilty as charged as to count III of the information. He appeals as of right.

Defendant operated an automobile salvage yard. Persons engaged in that business are required to obtain one or more licenses, MCL 257.248; MSA 9.1948, and are further required to maintain certain records pertaining to their transactions and inventory, MCL 257.251; MSA 9.1951. Defendant did neither. On March 17, 1983, two officers assigned to the commercial auto theft section of the Detroit Police Department went to defendant's place of business to check on a vehicle believed to be involved in an insurance fraud scheme. Although that vehicle checked out satisfactorily, the officers, while there, decided to do a spot check of defendant's yard. The officers found that parts from a 1978 Cadillac, a 1978 Buick, and a 1977 Chrysler came from stolen vehicles. According to one of the officers, the Cadillac parts (count III of the information) had been concealed in a heap, and looked fairly new, but the parts from the

* Circuit judge, sitting on the Court of Appeals by assignment.

other two vehicles (counts I and II of the information) were just lying out in the open. The officers then asked defendant to produce the statutorily required records pertaining to those parts, and defendant was unable to do so. The officers then seized the parts, and prosecution followed. The officers did not have a search warrant during any of these events.

## I

Notwithstanding the absence of a warrant, the prosecution contends that the search and seizure was proper under MCL 257.251(e); MSA 9.1951(e).[1] The statute provides as follows:

"Each dealer record and inventory, including the record and inventory of a vehicle scrap metal processor not required to obtain a dealer license, shall be open to inspection by a police officer or authorized officer or investigator of the secretary of state during reasonable or established business hours."

Defendant maintains that the search with a warrant contravenes the provisions of US Const, Am IV as well as the parallel Michigan provision found in Const 1963, art 1, § 11.

After the briefs in this case were filed, the Michigan Supreme Court decided *Tallman v Dep't of Natural Resources*, 421 Mich 585; 365 NW2d 724 (1984). *Tallman* controls our analysis.

A search without a warrant is unreasonable per se and violates both the Michigan Constitution and the United States Constitution unless the search is shown to be within an exception to the general

---

[1] In its brief on appeal, the prosecution also contends that the search and seizure without a warrant was authorized by Detroit City Ordinance, § 55-3-21 *et seq.* Counsel did not, however, provide sufficient language from the ordinance to allow us to determine whether the ordinance would justify the search.

rule. The United States Supreme Court has adopted an exception which has come to be known as the "pervasively regulated industry" doctrine, or the *Colonnade-Biswell* doctrine. *Colonnade Catering Corp v United States,* 397 US 72; 90 S Ct 774; 25 L Ed 2d 60 (1970); *United States v Biswell,* 406 US 311; 92 S Ct 1593; 32 L Ed 2d 87 (1972). The doctrine holds that searches without warrants are not unreasonable per se in pervasively regulated industries as long as certain conditions are met. Other states have also adopted the doctrine, *Tallman, supra,* p 613. In *Tallman, supra,* pp 616-617, the Michigan Supreme Court adopted the "pervasively regulated industry" doctrine as the law of this state. The Court described the application of the doctrine as follows:

"We conclude that conflicts arising under art 1, § 11 of the Michigan Constitution between the enforcement needs of governmental agencies and the privacy interests of regulated commercial actors should be resolved by balancing the following factors:

"(1) the existence of express statutory authorization for search or seizure;

"(2) the importance of the governmental interest at stake;

"(3) the pervasiveness and longevity of industry regulation;

"(4) the inclusion of reasonable limitations on searches in statutes and regulations;

"(5) the government's need for flexibility in the time, scope and frequency of inspections in order to achieve reasonable levels of compliance;

"(6) the degree of intrusion occasioned by a particular regulatory search; and

"(7) the degree to which a business person may be said to have impliedly consented to warrantless searches as a condition of doing business, so that the search does not infringe upon reasonable expectations of privacy." (Footnotes omitted.)

The Court further noted that the seven Michigan factors differ only slightly from the factors commonly applied in the federal courts. Federal precedent is therefore useful.

We conclude that all seven factors weigh in favor of the validity of this search.

(1). The statute quoted above literally provides only for inspection, but any inspection necessarily implies a search and, by reasonable interpretation of legislative intent, a seizure. See *Tallman, supra,* p 617, fn 12, interpreting MCL 308.1b(2)(e); MSA 13.1491(2)(2)(e).

(2) and (3). The state Legislature obviously views the governmental interest in regulation as being very important. Legislative regulations have been in effect for more than 60 years. 1921 PA 46. The degree of importance which the Legislature attaches to such regulations is also evidenced by the detail which appears in the regulatory legislation, MCL 257.201 *et seq.;* MSA 9.1901 *et seq.,* and by the wealth of administrative rules adopted by such agencies as the Department of State and the Department of State Police pursuant to legislative authority. Further, it is a matter of common knowledge that automobile theft and the stripping of stolen automobiles to salvage parts are significant national problems which deserve significant governmental attention.

(4). Despite the profusion of regulations pertaining to almost all aspects of the automobile and automobile parts businesses, we are not aware of any administrative rules which limit the search authorized by the quoted statute. Whether there are reasonable limitations on searches must therefore be determined from the statute itself.

Statutes are cloaked with a presumption of constitutionality. The court has a duty to construe the statute so as to avoid constitutional difficulties and

in a manner that comports with a finding of constitutionality. *Royal Auto Parts v Michigan,* 118 Mich App 284, 289; 324 NW2d 607 (1982). Where a statute would otherwise be unconstitutional, a narrowing construction should be given so as to render it constitutional if such is possible without doing violence to the Legislature's intent in enacting the statute. *People v Wilson,* 139 Mich App 205, 209; 362 NW2d 798 (1984).

Defendant argues that the Michigan statute does not contain reasonable limitations and therefore cannot stand constitutional scrutiny. Defendant relies on *Bionic Auto Parts & Sales, Inc v Fahner,* 721 F2d 1072 (CA 7, 1983), where the plaintiff sought an injunction against enforcement of a provision of the Illinois vehicle code which reads as follows:

"Every record required to be maintained under this Section shall be open to inspection by the Secretary of State or his authorized representative or any peace officer for inspection at any reasonable time during the night or day. Such inspection may include examination of the premises of the licensee's established place of business for the purpose of determining the accuracy of required records."

The district court held that the broad authorization for searches without warrants vested excessive discretion in the state officials and granted injunctive relief. Following the decision of the district court but prior to an opinion by the Seventh Circuit Court of Appeals, Illinois added a provision to its vehicle code which included a legislative finding that a system of mandatory licensing, record keeping, and inspection was necessary to reduce the transfer or sale of stolen motor vehicles or their parts within the State of Illinois. The new legislation provided that certain

designated peace officers are allowed to inspect individiuals and facilitites licensed under the motor vehicle code and that the inspection is to include a review of records and an inspection of those portions of the premises used by the licensee to store vehicles and parts reflected by the required books and records. The legislation also provides that a licensee or his representative is entitled to be present during any such inspection, that inspection may be inititated at any time that business is being conducted or work is being performed on the licensed premises whether or not the premises may be open to the public at the time, that any such inspection shall not continue for more than 24 hours after initiation, and that no more than 6 inspections of premises may be conducted within any 6-month period except pursuant to a search warrant.

Because of the new legislation passed before issuance of its opinion, the Seventh Circuit Court of Appeals declined to address the constitutionality of the former legislation, but did determine that the new legislation complied with the "pervasively regulated industry" doctrine developed in the federal courts.

We do not agree with defendant's contention that the Michigan legislation must be as specific and detailed as the new Illinois legislation, for we find that reasonable limitations on searches without warrants are implicit in the Michigan statute.

First, the persons authorized to conduct searches without warrants are limited to police officers or authorized officers or investigators of the Secretary of State. Although broad, this category of authorized persons would exclude such persons as building inspectors or other administrative officials who might whimsically decide to conduct a search without a warrant. Second, the time of the search

is limited to reasonable or established business hours. We interpret this provision to mean that even though a search might be initiated during regular business hours and is incomplete at the time that the business regularly closes, the search would have to be discontinued unless some basis for the obtaining of a search warrant had been established at that time. Third, the scope of the search is limited to the required record and the inventory of the dealer. Thus a dealer who operated a business and lived on the same premises would not be subject to a search of his living quarters. Fourth, since the search must be conducted during reasonable or established business hours, the owner or his representative will be present during any such search.

So interpreted, the Michigan statute avoids the overbroad legislative grant of discretion to officers found invalid in *United States v Taylor,* 488 F Supp 475 (D Or, 1980). The administrative search authorized by the legislation involved in that case permitted a search at any time, of any vessel whether commercial or not, of the "vessel and every part thereof and any person, trunk, package or cargo on board, and to this end may hail and stop such vessel, and use all necessary force to compel compliance". Also, since the Michigan statute applies only to persons required to be licensed in connection with the automobile or automobile parts business, it avoids the overbroad grant by Congress of authority to Occupational Safety and Health Act inspectors to make random inspections without warrants of business premises to ascertain whether they complied with the myriad of safety regulations imposed by that act, and which applied to all businesses engaged in interstate commerce, found invalid in *Marshall v Barlow's, Inc,* 436 US 307; 98 S Ct 1816; 56 L Ed 2d 305 (1978). The

comprehensive legislative scheme in Michigan providing for searches without warrants, as interpreted herein, is now closely akin to those authorizations (albeit frequently supplemented by regulations) approved in *Tallman, supra,* p 618, fn 15. The Michigan scheme is also more restrictive of police activity than the California provisions authorizing inspections in a number of different settings, see *Tallman, supra,* p 615, fn 10, and in such other commercial enterprises as dealing in perishable commoditites, *Wayne Cusimano, Inc v Block,* 692 F2d 1025 (CA 5, 1982).

The statute neither requires nor limits the number of searches without warrants that might be conducted. That seems to be a mixed blessing. On the one hand, overly frequent searches obviously could be unnecessarily instrusive into the privacy of a regulated business. On the other hand, searches should be conducted with sufficient regularity so that there is a comprehensive and predictable government presence, such that the owner is not left to wonder about the purpose of the inspector or the limits of his task. *Balelo v Baldrige,* 724 F2d 753, 765 (CA 9, 1984). See also *United States v Kaiyo Maru No 53,* 699 F2d 989, 995 (CA 9, 1983). The absence of any limit on the number of searches does not destroy the validity of the statute.

(5). The government's need for flexibility in conducting searches without warrants is apparent. A person who knowingly buys or sells stolen automobile parts is not likely to complain to the police. A person who innocently buys stolen automobile parts would have no occasion to do so. Trafficking in stolen automobile parts is, to that extent, a victimless crime, the only victim being the owner of the property that was originally stolen. Stolen automobile parts are much less readily identifiable

than the stolen automobiles themselves. The need for searches without warrants as part of an overall comprehensive scheme to address that problem was noted by the Illinois Legislature in *Bionic, supra.* Further, we suspect that even the vast majority of automobile parts dealers who are not knowingly dealing in stolen parts might nevertheless become somewhat casual in their record keeping and purchasing practices if they are not exposed to the potential of a search without a warrant.

(6). This search was not particularly intrusive. The search was conducted during regular business hours and was completed in less than one day. It was confined to the outdoor salvage yard, which was an area open to customers, and did not unduly disrupt defendant's business activities. It is clear that this search falls within the authority granted by the statute as herein construed.

(7). We conclude that defendant impliedly consented to searches without warrants. He chose to enter the automobile parts business. Although defendant's salvage yard was inspected by the police every three to six months, he continued to operate the business. Given the long duration of comprehensive Michigan regulation of that business, defendant cannot claim any reasonable expectation of privacy regarding the search involved here.

## II

Defendant argues simplistically that, since he was not a licensed dealer, the trial court erred in instructing the jury as to the presumption of knowledge that property was stolen as provided by MCL 750.535(2); MSA 28.803(2). Defendant's argument cannot stand. First, the statute itself does

not refer to licensed dealers, but rather to all dealers. Second, the defendant clearly was required to be licensed, and it would be ludicrous to conclude that he could avoid the presumption of knowledge by failing to do that which is required of him. The trial court correctly ruled that the defendant's proffered evidence of a lack of license was irrelevant.

Defendant also argues that the jury's verdicts of acquittal on counts I and II and conviction on count III were inconsistent. Inconsistent verdicts are permissible in Michigan. *People v Lewis,* 415 Mich 443; 330 NW2d 16 (1982). Further, there was a factual difference as to the location of the Cadillac parts and the location of the parts from the other two automobiles.

Defendant claims that the trial court erred in failing to give his theory of the case as requested and in failing to give certain other instructions. Although the trial court did not read the defendant's theory of the case as submitted, the court did adequately instruct the jury as to the defense theory of the case, which was really quite simple— defendant claimed he didn't know the property was stolen. Contrary to defendant's contention on appeal, the trial court did read CJI 26:1:06 dealing with the purchase or concealment of stolen property by one who has an honest belief that he has a right to do so. The trial court clearly instructed the jury as to the material substance of the issues and the theories of each party.

Affirmed.