PEOPLE v GRIEL THOMAS

PEOPLE v MARY LEE THOMAS

Docket Nos. 145392, 149194. Submitted February 9, 1993, at Detroit. Decided August 2, 1993, at 9:50 A.M. Leave to appeal sought.

Griel and Mary Lee Thomas were charged in the Recorder's Court for the City of Detroit with possession with intent to deliver more than 50, but less than 225, grams of cocaine. Mary Lee was also charged with, and pleaded guilty of, delivery of less than 50 grams of cocaine. The defendants were arrested after Mary Lee sold cocaine to an undercover police officer at the defendant's party store. Following the defendants' arrest, a search warrant was obtained for the premises, and the subsequent search resulted in the discovery of more cocaine. Both defendants brought motions to suppress the evidence regarding the possession with intent to deliver charges, alleging violation of their Fourth Amendment rights. The court, Gershwin A. Drain, J., granted the motions and ordered the possession charges dismissed, finding that the search warrant was defective because the affidavit submitted by the police failed to include the date that the controlled buy from May Lee took place. The people appealed as of right with regard to Griel Thomas and by leave granted with regard to Mary Lee Thomas, alleging that, notwithstanding the defective warrant, the officers had the authority under the Liquor Control Act to search the defendants' party store even without a warrant. The appeals were consolidated.

The Court of Appeals *held:*

1. The officers' conduct was permissible under the Liquor Control Act. The trial court clearly erred in ordering the evidence suppressed.

2. The officers' subjective intent at the time they executed the defective warrant is not dispositive.

3. The provision of the Liquor Control Act governing searches and seizures, MCL 436.7a(2); MSA 18.977(1)(2), is constitutional.

4. The liquor industry, being a pervasively regulated industry, is subject to an exception to the search warrant requirement. In applying the pervasively regulated industry doctrine, a balance must be struck between the enforcement needs of

governmental agencies and the privacy interests of the regulated parties. Conflicts that arise should be resolved by balancing (1) the existence of express statutory authorization of searches and seizures, (2) the importance of the governmental interest at stake, (3) the pervasiveness and longevity of industry regulation, (4) the inclusion of reasonable limitations on searches in statutes and regulations, (5) the government's need for flexibility in the time, scope, and frequency of inspections in order to achieve reasonable levels of compliance, (6) the degree of intrusion occasioned by a particular regulatory search, and (7) the degree to which a business person may be said to have impliedly consented to searches without a warrant as a condition of doing business, so that the search does not infringe upon reasonable expectations of privacy.

5. The administrative search scheme involved in this case is valid under the pervasively regulated industry doctrine. There is statutory authority for the search of the defendants' party store and seizure of the contraband; there is a substantial governmental interest in prohibiting the sale of narcotics on premises operated under the authority of the Liquor Control Commission; the liquor industry is a pervasively regulated industry; the Liquor Control Act contains reasonable limitations on searches and those limitations were not exceeded in this case; there is a need for flexibility in the time, scope, and frequency of inspections of premises operated under the authority of the Liquor Control Commission; the degree of intrusion occasioned by the search was minimal; and the defendants reasonably should have expected a search without a warrant to occur on the licensed premises.

6. The police officers did not need a search warrant to conduct a search of the defendants' party store because they witnessed a clear violation of the Liquor Control Act when the controlled buy from Mary Lee occurred and they had the authority under the act to search for further evidence of violations. The defect in the warrant does not render inadmissible the evidence seized, inasmuch as the warrant was unnecessary.

7. The order of suppression must be reversed and the matter remanded for further proceedings.

Reversed and remanded.

1. SEARCHES AND SEIZURES — INTOXICATING LIQUORS — SEARCHES WITHOUT A WARRANT.

Police officers are authorized by statute to search without a warrant the premises of a licensed liquor establishment for the purpose of discovering any violations of the Liquor Control Act

or the rules promulgated pursuant to that act by the Liquor Control Commission and to seize any evidence of a violation of the act or the rules (MCL 436.1, 436.7a[2]; MSA 18.971, 18.977[1][2]; 1985 AACS, R 436.1011[1], [5][d]).

2. ADMINISTRATIVE LAW — SEARCHES AND SEIZURES — PERVASIVELY REGULATED INDUSTRIES.

In determining whether a search and seizure without a warrant falls within the pervasively regulated industry exception to the requirement that a warrant is required for regulatory and administrative searches, a court should balance: the existence of express statutory authorization of such searches and seizures; the importance of the governmental interest; the pervasiveness and longevity of regulation; the inclusion in statutes and regulations of reasonable limitations on searches; the government's need for flexibility in the time, scope, and frequency of inspections to achieve reasonable levels of compliance; the degree of intrusion occasioned by the search; and the degree to which implied consent to such searches is given as a condition of doing business.

3. CONSTITUTIONAL LAW — INTOXICATING LIQUORS — INSPECTION OF LICENSED PREMISES.

The statute authorizing police officers to inspect without a warrant premises licensed under the authority of the Liquor Control Commission is constitutional (MCL 436.7a[2]; MSA 18.977[1][2]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Karen M. Woodside,* Assistant Prosecuting Attorney, for the people.

*Timothy M. Holloway* and *W. Otis Culpepper,* for the defendants.

Before: JANSEN, P.J., and CAVANAGH and P. D. SCHAEFER,* JJ.

P. D. SCHAEFER, J. The prosecution appeals a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

September 20, 1991, Recorder's Court order suppressing certain evidence because it was allegedly seized in violation of defendants' Fourth Amendment rights. As a result of the order suppressing the evidence, charges of possession of more than 50, but less than 225, grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii), lodged against each defendant were ordered dismissed. We reverse the order of suppression and remand the matter to the trial court for further proceedings.

The charges against defendants arise out of a controlled drug buy that took place on April 26, 1991, in defendants' party store. Officer Romel Jamerson entered defendants' store during business hours and purchased "crack" cocaine from Mary Thomas through a glass window at the cashier's station. Officer Jamerson notified a team of officers who were waiting to make the arrest. The officers entered the premises, where they arrested Mary Thomas and Griel Thomas. One of the officers then went to a magistrate to obtain a warrant based upon the facts articulated above. When the officer swore out the affidavit, he failed to include the date upon which the controlled buy took place. The magistrate issued a warrant and the officers proceeded to search the store.

Officers searched the office of the store and found a substantial amount of cocaine in a desk. On the basis of the controlled buy and the subsequent discoveries, Mary Thomas was charged with delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and possession with intent to deliver more than 50, but less than 225, grams of cocaine. Mary Thomas pleaded guilty of the delivery charge and does not attack the validity of that conviction on appeal. Defendant Griel Thomas was also charged with

possession with intent to deliver more than 50, but less than 225, grams of cocaine. Both defendants were bound over on the charges and subsequently brought motions to suppress the evidence found in the desk because of the officer's failure to include in the affidavit the date that the controlled buy took place.

At the suppression hearing, the prosecution conceded that the warrant was defective because the affidavit omitted the date upon which the controlled buy took place. However, the prosecution argued that, notwithstanding the defective warrant, the officers had authority to search the premises under the Liquor Control Act, MCL 436.1 *et seq.*; MSA 18.971 *et seq.* The prosecution cited the case of *People v Jones,* 180 Mich App 625; 447 NW2d 844 (1989), wherein this Court concluded that the Liquor Control Act grants law enforcement personnel broad authority to execute without a warrant searches of a licensed premises in order to enforce provisions of the act. *Id.* at 631. The trial court found *Jones* to be distinguishable and found that the officers had no intention of enforcing the liquor control laws. The court then granted defendants' motion to suppress.

The Fourth Amendment of the United States Constitution forbids unreasonable searches and seizures and provides that no warrants shall issue in the absence of probable cause. US Const, Am IV; *People v Davis,* 442 Mich 1, 9; 497 NW2d 910 (1993).[1] In order to justify a search, the police must demonstrate either that they had a valid warrant

---

[1] Although the Michigan Constitution contains a substantially similar provision for protection against unreasonable searches and seizures, it is inapplicable where a defendant seeks to have evidence of a controlled substance suppressed where that evidence was found outside the curtilage of a dwelling house. See Const 1963, art 1, § 11; *People v Bullock,* 440 Mich 15, 24 and n 6; 485 NW2d 866 (1992). Accordingly, our discussion of this issue is limited to the question whether seizure was permissible under the Fourth Amendment.

authorizing the search, or that the circumstances were such that one of the recognized exceptions to the warrant requirement was implicated. *Id.* at 10. Searches conducted without a warrant are unreasonable per se, and in order to justify a search without a warrant, the officers must demonstrate that the conduct fell within one of the narrow specific exceptions to the warrant requirement. *Id.*

In this case, we are persuaded that the officers' conduct was permissible under the Liquor Control Act, and thus believe the court clearly erred in ordering the evidence suppressed. Just as in *Jones, supra,* the officers' subjective intent at the time they executed the defective warrant is not dispositive. *Jones, supra* at 631-632, n 3. The trial court concluded that the holding in *Jones* was distinguishable because in *Jones* the officers first consulted the Attorney General's office before conducting the search. However, that fact was irrelevant to the holding of the case inasmuch as it only sheds light on the officers' intent when the search took place. Inasmuch as the officers had broad authority to perform the search with or without the consent of the Attorney General, the fact that the officers failed to obtain that consent in this case is irrelevant as well.[2]

Having concluded that the trial court erred in granting defendants' motion to suppress, we must now address defendants' proposition that the provision of the Liquor Control Act governing searches and seizures is unconstitutional. We conclude that it is not.

Statutes are presumed to be constitutional, and courts have a duty to construe them as such.

[2] In fact, the *Jones* Court specifically stated that it was unnecessary for the officers to obtain a warrant because they had absolute authority to conduct the search pursuant to the terms of the Liquor Control Act. See *Jones, supra* at 632 and n 4.

*Ullery v Sobie,* 196 Mich App 76, 79; 492 NW2d 739 (1992). Absent a showing that unconstitutionality is clearly apparent, the statute will be upheld. *Id.* The party challenging a statute has the burden of proving its invalidity. *Id.* A valid statute is not unconstitutional merely because those charged with its enforcement might improperly administer it. *People v Kirby,* 440 Mich 485, 493; 487 NW2d 404 (1992). In *Tallman v Dep't of Natural Resources,* 421 Mich 585, 617-618; 365 NW2d 724 (1984), our Supreme Court officially sanctioned the "pervasively regulated industry doctrine" in evaluating regulatory search schemes. The Court adopted the following seven-part test in applying the doctrine:

> (1) the existence of express statutory authorization for search or seizure;
> (2) the importance of the governmental interest at stake;
> (3) the pervasiveness and longevity of industry regulation;
> (4) the inclusion of reasonable limitations on searches in statutes and regulations;
> (5) the government's need for flexibility in the time, scope, and frequency of inspections in order to achieve reasonable levels of compliance;
> (6) the degree of intrusion occasioned by a particular regulatory search; and
> (7) the degree to which a business person may be said to have impliedly consented to warrantless searches as a condition of doing business, so that the search does not infringe upon reasonable expectations of privacy. [*Id.* at 617-618.]

These factors are substantially similar to those adopted by the federal courts. *Id.*

In the instant case, the statute at issue provides in relevant part as follows:

A licensee shall make the licensed premises available for inspection and search by a commission investigator or law enforcement officer empowered to enforce the commission's rules and Act No. 8 of the Public Acts of the Extra Session of 1933, as amended, being sections 436.1 to 436.58 of the Michigan Compiled Laws during regular business hours or when the licensed premises are occupied by the licensee or a clerk, servant, agent, or employee of the licensee. Evidence of a violation discovered pursuant to this subsection may be seized and used in an administrative or court proceeding. [MCL 436.7a(2); MSA 18.977(1)(2).]

Pursuant to MCL 436.1; MSA 18.971, a police officer is charged with the duty of seeing that the provisions of the act are enforced strictly. In fact, it makes it a misdemeanor for an officer to wilfully neglect or refuse to enforce the act.

We now turn to application of the factors articulated in the *Tallman* test to this case. We undertake this task, keeping in mind our duty to construe a statute to avoid constitutional infirmities and our obligation to construe the statute narrowly so as to effectuate the legislative intent. See *People v Pashigian,* 150 Mich App 97, 101; 388 NW2d 259 (1986); *People v Barnes,* 146 Mich App 37, 46-47; 379 NW2d 464 (1985).

Clearly there exists statutory authority for the search of the premises and seizure of contraband in this case. In fact, there is a specific administrative rule prohibiting the conduct at issue herein. See 1985 AACS, R 436.1011(1) and (5)(d). Inasmuch as the activity in this case constitutes a clear violation of the liquor control laws, the police officers had the lawful authority to seize the evidence and search for further violations. See MCL 436.1; MSA 18.971. Although defendants disagree, we believe that there is a substantial governmen-

tal interest, not only in prohibiting the sale of narcotics, but, perhaps more importantly, in prohibiting the sale of narcotics on premises operated under the authority of the Liquor Control Commission. Defendants do concede, as they must, that the liquor industry is a pervasively regulated industry. *Colonnade Catering Corp v United States,* 397 US 72, 76-77; 90 S Ct 774; 25 L Ed 2d 60 (1970). Accordingly, the first three prongs of the *Tallman* test are satisfied in this case.

The true focus of the dispute in this case lies in the questions addressed by the remaining four factors under the *Tallman* test. Under the fourth factor, we must determine whether there are reasonable limitations on searches in the statutes and regulations. *Tallman, supra* at 618. We conclude that there are reasonable limitations within the statute and, further, that those limitations were not exceeded in this case. The statute specifically limits the searches to "regular business hours" or times when the licensee is present. Furthermore, the scope of the search is limited to the "licensed premises," thereby keeping the search within the bounds necessary to enforce the provisions of the act and excluding private and nonbusiness areas. See *id.* at 626-627. The search in this case took place when the licensed premises were open for business and when both licensees were present. Moreover, the search was limited to the licensed premises. We believe that the statute contains reasonable limitations on the searches and seizures.

The next factor is focused on the government's need for flexibility in the time, scope, and frequency of the inspections. *Id.* at 618. This factor is necessarily related to the nature of the industry and the extent to which the industry is pervasively regulated. In the case of the liquor industry,

the potential for violation is extremely high and the danger occasioned by certain violations may be severe. In order to offer incentive to licensed business owners to comply with the provisions of the Liquor Control Act, it is somewhat necessary to enforce the provisions under the fear of an unannounced search of the premises. See *Pashigian, supra* at 101; *Barnes, supra* at 46-47. Moreover, the nature of the violation in the case at hand is such that an announced search would arguably lead to destruction of the evidence and thereby frustrate the purpose of the regulatory scheme.

The next factor to consider is the degree of intrusion occasioned by a particular regulatory search. *Tallman, supra* at 618. In this case, the search took place during business hours with both licensees present. The search must be viewed in the context of having followed a valid arrest for delivery of controlled substances on the premises: a violation of both the Liquor Control Act and of the controlled substance provisions of the Public Health Code, MCL 333.7101 *et seq.*; MSA 14.15(7101) *et seq.* Some of the contraband was found in the office area of the store on top of a desk, while the major portion was found in an unlocked desk drawer. The facts do not reveal any forcible means employed to conduct the search. Under the circumstances, we believe that the degree of intrusion occasioned by the search in this case was minimal.

The final factor to be considered is the degree to which the business person may be said to have impliedly consented to a search without a warrant as a condition of doing business. We note that the face of the application for a license contains a statement indicating that the licensee agrees to submit to an unannounced search of the premises for violations. Moreover, the license contains a

statement that the licensee agrees to abide by all of the regulatory provisions contained in the Liquor Control Act. Given the extensive regulation of the liquor industry and the decreased expectation of privacy in certain commercial property, *Donovan v Dewey,* 452 US 594, 598-599; 101 S Ct 2534; 69 L Ed 2d 262 (1981), we believe that defendants should have reasonably expected a search without a warrant to occur on the premises.

Defendants' reliance on *Colonnade, supra,* for the proposition that the Supreme Court has invalidated statutes similar to that at issue in this case is misplaced. In *Colonnade,* the Court determined that "[w]here Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." *Id.* at 77. The Court did not conclude that the statute at issue was unconstitutional. Rather, the Court invalidated a search conducted by the police where officers broke into a locked storage area containing liquor because that method of search was not within the provisions of the statutes governing such inspections. The Court stated that when Congress provided for monetary fines for a licensee's failure to comply with a request for inspection, it precluded the use of force to effectuate the regulatory goals of the statutes. *Id.*

Under the circumstances of this case, we hold that the police officers did not need a search warrant to conduct a search of defendants' party store in view of the fact that the officer witnessed a clear violation of the Liquor Control Act and had the authority under the statute to search for further evidence of violations. Just as we commended the officers' decision to delay the search of the premises pending the issuance of a warrant in

*Jones, supra* at 632, n 4, we similarly commend the officers in this case for their deference to defendants' constitutional rights. However, under the circumstances of this case, the defect in the warrant does not render inadmissible the evidence seized inasmuch as the warrant was unnecessary. We further hold that the statute at issue survives the *Tallman* test for determining the constitutionality of an administrative search scheme. We caution that, although the facts of this case do not warrant suppression of the evidence, this opinion is by no means a blanket authorization for law enforcement personnel to conduct random searches of licensed liquor establishments. The better approach, as is always the case with searches of personal property, is to secure from a neutral and detached magistrate a validly executed warrant supported by probable cause.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

JANSEN, P.J., concurred.

CAVANAGH, J., concurred in the result only.