## GORA v CITY OF FERNDALE

Docket No. 106783. Argued December 10, 1997 (Calendar No. 11). Decided April 1, 1998.

Hildegard Gora, the Loving Touch, Inc., and other former operators and employees of massage parlors in the city of Ferndale, brought an action in the Oakland Circuit Court against the city, challenging the constitutionality of Ordinance No. 832, as amended by Ordinance No. 836, governing the operation of massage parlors. The court, Deborah G. Tyner, J., found that several sections of the ordinance were violative of the state and federal constitutions. The Court of Appeals, MURPHY, P.J., and M. J. KELLY, J. (SAAD, J., concurring in the result only), vacated the decision of the circuit court, holding that the entire ordinance was preempted by the Occupational Code regulating myomassologists (Docket No. 148434). The Supreme Court, in lieu of granting leave to appeal, vacated the decision of the Court of Appeals and remanded the case for reconsideration in light of 1995 PA 104, which repealed those portions of the Occupational Code that formed the basis for the finding of preemption, and to consider the constitutional issues. 451 Mich 875 (1996). On remand, the Court of Appeals, MURPHY, P.J., and M. J. KELLY and SAAD, JJ., in an opinion per curiam, determined that § 7-266(a) of the ordinance, which prohibits opposite sex massage except on a written order from a licensed health care practitioner, impermissibly discriminates on the basis of gender, in violation of the state and federal Equal Protection Clauses. It further held that § 7-265, which provides for periodic inspections of massage parlors by the police or other authorized city inspectors without warrants, violates constitutional protections against searches and seizures (Docket No. 194745). The city appeals.

In an opinion by Justice TAYLOR, joined by Chief Justice MALLETT, and Justices BRICKLEY, BOYLE, and WEAVER, the Supreme Court *held*:

The Ferndale massage parlor ordinance is constitutional in its entirety. Provisions restricting or prohibiting opposite sex massages do not offend the Equal Protection Clause of the federal constitution, and the Michigan Constitution provides no greater protection than does its federal counterpart. The administrative search exception to the warrant requirement is applicable in this case because the United States Supreme Court implicitly has held

that the massage parlor industry is subject to pervasive regulation. Permitting periodic reasonable inspections without warrants solely for determining compliance with the requirements of the ordinance is consistent with constitutional protections.

1. The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws. Because ordinances are presumed constitutional, the party challenging the validity of an ordinance has the burden of proving a violation. The Court of Appeals decision is contrary to numerous United States Supreme Court decisions allowing such ordinances to stand on the ground that no federal question implicating equal protection guarantees was raised by the measures. Further, the ordinance does not run afoul of the Michigan Constitution because its equal protection guarantees provide no greater protection than that conferred by the federal.

2. While it is well established that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to administrative inspections of private commercial property, an exemption from the search warrant requirement exists for administrative inspections of closely regulated industries. Although regulation of massage parlors has not been as extensive as that of some other enterprises, nonetheless it has been held to be a pervasively regulated industry. Thus, inspections of massage parlors, conducted without warrants pursuant to a comprehensive licensing and regulation ordinance, are permissible under the administrative search exception to the warrant requirement of the Fourth Amendment.

3. The ordinance cannot be adjudged unconstitutional solely on the basis that criminal penalties are provided for its violation. The penalties imposed are not the equivalent of a criminal prosecution under Michigan law. Even if they were, the United States Supreme Court has repeatedly held that an administrative regulatory scheme is not rendered constitutionally unreasonable because it imposes criminal penalties for refusing to allow an administrative inspection conducted without a warrant or for any other violation of the underlying law. By itself, imposition of criminal penalties, is insufficient to invalidate an otherwise constitutional ordinance providing for administrative inspections of commercial property conducted pursuant to a comprehensive licensing program.

4. While it is true that ordinance § 7-265 does not state that inspections must be conducted in a reasonable manner or at a reasonable time, the trial court erred in its assumption that the city council intended to authorize unreasonable inspections. Legislative enactments enjoy a presumption of constitutionality, and an

assumption that city council members intended to violate their civic trust impermissibly shifts the burden of proof to the municipality. The ordinance provides that inspections may be conducted only for the purpose of determining full compliance with its provisions, i.e., that they are to be conducted reasonably. It is well established that administrative searches conducted without warrants are permissible in closely regulated industries because the licensee in such an industry is held to have impliedly consented to periodic inspections by applying for and obtaining a license. An unreasonable inspection, as a matter of law, could not be one to which the licensee could be held to have consented.

5. A legislative enactment can be held to be facially invalid only if there are no factual circumstances under which the provision could be constitutionally implemented. Because there are circumstances under which the ordinance would be valid, namely, inspections conducted in a reasonable manner consistent with plaintiffs' Fourth Amendment rights, the test is met and the facial challenge to constitutionality fails.

Justice CAVANAGH, concurring in part and dissenting in part, stated that review of the equal protection issue is precluded until the United States Supreme Court affords the issue plenary review. This Court should be able to review the merits of the equal protection argument, however. The merit of the plaintiffs' argument is at the least colorable after *JEB v Alabama ex rel TB*, 511 US 127 (1994), recognized an equal protection violation even though members of both sexes were excluded from participating in the jury process on the basis of their gender.

Reversed.

Justice KELLY, dissenting, stated that the majority errs in failing to undertake an independent analysis of Michigan's Equal Protection Clause, Const 1963, art 1, § 11. It is error for the majority to hold that the United States Supreme Court dismissal in *Wright v Indianapolis*, 439 US 804 (1978), prevents the Michigan Supreme Court from undertaking an independent analysis of the issues presented in this case under the Michigan Constitution. A finding that the massage parlor industry is pervasively regulated in Indiana does not dictate that regulation is pervasive in Michigan or in any other state. It does not follow from the mere finding that an industry is pervasively regulated that searches of commercial premises without warrants used in that industry are constitutional under Michigan law. Nor does the United States Supreme Court dismissal of *Wright* mean that § 7-265 of the Ferndale ordinance is permissible under Const 1963, art 1, § 11. The majority merely holds that federal precedent compels its conclusion, an approach *Sitz v Dep't*

*of State Police*, 443 Mich 744 (1993), explicitly rejected. It is not obvious that compelling reasons exist to expand the coverage of Const 1963, art 1, § 11 in this area.

217 Mich App 295; 551 NW2d 454 (1996) reversed.

*Stephen M. Taylor* for the plaintiff.

*Brian M. Smith & Associates, P.C.* (by *Lawrence J. DeBrincat* and *Justin L. Smith*), for the defendant-appellant.

TAYLOR, J. Plaintiffs, former operators and employees of massage parlor establishments in the city of Ferndale, brought suit challenging the constitutionality of Ferndale Ordinance No. 832, as amended by Ordinance No. 836. The ordinance is a comprehensive scheme of regulations governing the operation of massage parlors within the city of Ferndale. In a published opinion on remand, the Court of Appeals affirmed the circuit court's finding that two sections of the city's ordinance were violative of the state and federal constitutions.[1] The panel determined that § 7-266(a) of the ordinance, which prohibits opposite sex massage in massage parlor establishments except on a written order from a licensed health care practitioner, impermissibly discriminates on the basis of gender in violation of the state and federal Equal Protection Clauses.[2] It further held that § 7-265, which provides for periodic inspections without warrants of massage parlors by the police or other authorized city inspectors, violates constitutional protections against

---

[1] 217 Mich App 295; 551 NW2d 454 (1996).

[2] US Const, Am XIV, § 1;  Const 1963, art 1, § 2.

searches and seizures.[3] We granted leave to appeal[4] and now reverse because we find that the ordinance is constitutionally valid in its entirety.

I

In November 1990, the city of Ferndale enacted a comprehensive ordinance regulating massage parlors. Among other things, Ordinance No. 832, as amended by Ordinance No. 836, sets forth procedures and educational requirements for obtaining a city license or permit to own, operate, or work in a massage parlor, and prescribes necessary facilities, hours of operation, and employee conduct and dress. The ordinance also restricts opposite sex massages in § 7-266(a). That section provides:

> Treatment of persons of opposite sex restricted. It shall be unlawful for any person holding a permit under this section and working in a massage establishment to treat a person of the opposite sex, except upon the signed order of a licensed physician, osteopath, chiropractor, or registered physical therapist, which order shall be dated and shall specifically state the number of treatments, not to exceed ten (10). The date and hour of each treatment given and the name of the operator shall be entered on such order by the establishment where such treatments are given and shall be subject to inspection by the police pursuant to this article. The requirements of this subsection shall not apply to treatments given in the residence of a patient, the office of a licensed physician, osteopath or registered physical therapist, chiropractor, or in a regularly established and licensed hospital or sanitarium.

---

[3] US Const, Am IV, made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961). See also Const 1963, art 1, §§ 11, 17.

[4] 456 Mich 851 (1997).

Further, the ordinance provides for periodic inspections of massage parlor establishments at § 7-265, which states:

> The chief of police or other authorized inspectors from the City of Ferndale shall from time to time make inspection of each massage business establishment for the purposes of determining that the provisions of this article are fully complied with. It shall be unlawful for any licensee to fail to allow such inspection officer access to the premises or hinder such officer in any manner.

Under § 2-270, violation of any provision of the ordinance is a misdemeanor punishable by a fine of up to $500 or ninety days in jail.

Plaintiffs filed suit in Oakland Circuit Court, challenging the constitutionality of the ordinance. Initially, the circuit court found that several sections of the ordinance were violative of the state and federal constitutions. In reviewing this decision, however, the Court of Appeals held that the entire ordinance was preempted by provisions of the Occupational Code regulating myomassologists and did not address plaintiffs' constitutional claims.[5] In lieu of granting leave to appeal, this Court issued an order vacating that decision and remanding the case for reconsideration in light of 1995 PA 104, which repealed those portions of the Occupational Code that formed the basis of the panel's finding of preemption.[6] In addition, we directed the Court of Appeals to consider the constitutional issues that were left unaddressed.

On June 21, 1996, the Court of Appeals issued a second opinion on remand, holding that the two pro-

[5] 210 Mich App 622; 533 NW2d 840 (1995).
[6] 451 Mich 875 (1996).

visions at issue are unconstitutional. 217 Mich App 295; 551 NW2d 454 (1996). The panel concluded that § 7-266(a) violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, as well as the equal protection guarantees provided by Michigan's Constitution. Const 1963, art 1, § 2. The opinion observed that classification schemes based on gender require application of the heightened scrutiny test, which requires that the classification serve an important governmental purpose and that it must be substantially related to achieving the government's objective. 217 Mich App 303. In applying this test to the ordinance at issue, it stated:

> Section 7-266(a) of defendant's ordinance is directed at an important public purpose, mainly the prevention of prostitution at massage parlors. Defendant's brief does not explain how the means of prohibiting mixed-gender massage is substantially related toward this end. Although prohibiting massage performed upon persons of the opposite gender would certainly prevent any sort of heterosexual contact between female masseuses and male customers, it would also cut the available number of plaintiff's [sic] prospective customers in half, significantly affecting their business. Although defendant's goal is legitimate, the prohibition applied to accomplish that goal is far too broad to be considered substantially related under the heightened-scrutiny test. [*Id.* at 303-304.]

With regard to the section of the ordinance dealing with inspections, § 7-265, the Court of Appeals affirmed the circuit court's determination that the provision violated the Fourth Amendment's constitutional protections against conducting searches and seizures without warrants. *Id.* at 304. It reached this conclusion on the basis of the reasoning that the administrative search exception to the warrant

requirement is inapplicable because the state of Michigan does not pervasively regulate the massage parlor industry. *Id.* at 305. However, the panel reversed the circuit court's finding of constitutional violations with regard to other provisions of the ordinance relating to educational requirements, minimum age restrictions, and prohibitions regarding touching or exposure of body parts.[7]

II

Before beginning our analysis, we note that an individual's right to engage in business is subject to the state's authority, pursuant to its historic police powers, to enact laws protecting the public health, safety, welfare, and morals. *Grocers Dairy Co v Dep't of Agriculture Director*, 377 Mich 71, 75; 138 NW2d 767 (1966). "The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws." *Rental Property Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 253; 566 NW2d 514 (1997). The rules governing the construction of statutes apply with equal force to the interpretation of municipal ordinances. *Macenas v Village of Michiana*, 433 Mich 380, 396; 446 NW2d 102 (1989). Statutes and ordinances must be construed in a constitutional manner if possible. *Detroit v Qualls*, 434 Mich 340, 364; 454 NW2d 374 (1990). Because ordinances are presumed constitutional, the party challenging the validity of an ordinance has the burden of proving a

---

[7] Plaintiffs have not appealed from this portion of the Court of Appeals decision.

violation. *Rental Property Owners Ass'n, supra* at 253.

III

The city argues that the Court of Appeals erred when it concluded that § 7-266(a), prohibiting opposite sex massages, was unconstitutional as a violation of the Fourteenth Amendment. We agree. The Court of Appeals decision is contrary to numerous United States Supreme Court decisions allowing such ordinances to stand on the basis of its conclusion that no federal question implicating equal protection guarantees was raised by the measures. Further, the ordinance does not run afoul of our state constitution. In *Doe v Dep't of Social Services*, 439 Mich 650, 672; 487 NW2d 166 (1992), we stated:

> [W]e do not find in the wording used, nor in its arrangement, any evidence of purpose on the part of the drafters to provide broader protection in the Equal Protection Clause of the state constitution than is found in its federal counterpart. Rather, the pattern suggests a deliberate effort to duplicate the protection secured by the federal clause.

The United States Supreme Court has repeatedly ruled that ordinances prohibiting opposite sex massage do not present a substantial federal question.

In the first of these cases, *Kisley v City of Falls Church*, 212 Va 693; 187 SE2d 168 (1972), the Virginia Supreme Court held that an ordinance restricting opposite sex massages did not violate constitutional due process or equal protection guarantees. *Id.* at 696. The court concluded that, because the ordinance applied equally to both men and women, "[t]here is nothing in the ordinance that denies the equal protection guaranteed by the Fourteenth Amendment . . . ."

*Id.* On appeal, the United States Supreme Court dismissed the matter for want of a substantial federal question. *Kisley v City of Falls Church,* 409 US 907; 93 S Ct 237; 34 L Ed 2d 169 (1972). The meaning of such a dismissal is that all the issues properly presented to the Supreme Court have been considered on the merits and held to be "without substance"; for this reason, the adjudication is binding precedent under the doctrine of stare decisis with respect to those issues when raised in subsequent matters. *In re Apportionment of State Legislature— 1992,* 439 Mich 715, 729; 486 NW2d 639 (1992), citing *Hicks v Miranda,* 422 US 332; 95 S Ct 2281; 45 L Ed 2d 223 (1975).

Not surprisingly, in subsequent cases before the Supreme Court raising the identical issue, the Court has consistently rejected constitutional challenges. See, e.g., *Wright v Indianapolis,* 439 US 804; 99 S Ct 60; 58 L Ed 2d 97 (1978), where, again, the Court dismissed for want of a substantial federal question *Indianapolis v Wright,* 267 Ind 471; 371 NE2d 1298 (1978). The Court did the same in *Smith v Keator,* 419 US 1043; 95 S Ct 613; 42 L Ed 2d 636 (1974), and in *Rubenstein v Cherry Hill Twp,* 417 US 963; 94 S Ct 3165; 41 L Ed 2d 1136 (1974). The federal circuit and district courts have followed this authority, as have the state courts that have considered it.[8] It can be

---

[8] Accord *Song v Elyria, Ohio,* 985 F2d 840, 843 (CA 6, 1993), *Oriental Health Spa v Fort Wayne,* 864 F2d 486, 490 (CA 7, 1988), *Mini Spas v South Salt Lake City,* 810 F2d 939 (CA 10, 1987), *Pollard v Cockrell,* 578 F2d 1002, 1010-1011 (CA 5, 1978), *Tomlinson v Savannah,* 543 F2d 570, 571 (CA 5, 1976), *Colorado Springs Amusements, Ltd v Rizzo,* 524 F2d 571, 576 (CA 3, 1975), cert den 428 US 913 (1976), *Clampitt v Fort Wayne,* 682 F Supp 401 (ND Ind, 1988), *Wigginess, Inc v Fruchtman,* 482 F Supp 681, 687-689 (SD NY, 1979), aff'd 628 F2d 1346 (CA 2, 1980), cert den 449 US 842 (1980), *Techtow v City Council of North Las Vegas,* 105

said, then, that this issue has been conclusively decided with regard to the federal constitution, and this Court, in light of this authority and the merits of the arguments presented, also concludes that this ordinance restricting or prohibiting opposite sex massages does not violate federal equal protection guarantees. *People v Walker (On Rehearing)*, 374 Mich 331, 336; 132 NW2d 87 (1965).[9]

Further, as noted above, the scope of the equal protection guarantee afforded by our state constitution is coextensive with its federal counterpart. *Doe, supra* at 672. Therefore, the United States Supreme Court dismissals cited above compel our conclusion that the ordinance is not violative of plaintiffs' rights to equal protection of the law under art 1, § 2 of Michigan's Constitution.

IV

Having decided that plaintiffs' equal protection claims are unavailing, we now move on to consider the plaintiffs' constitutional challenge to the inspection provision of the ordinance as violative of the

---

Nev 330, 333-334; 775 P2d 227 (1989), and *Redwood Gym v Salt Lake Co Comm*, 624 P2d 1138, 1146 (Utah, 1981) ("It has been established to a certainty . . . that an ordinance such as the one in question here does no violence to federal guarantees of equal protection"). We find the reasoning in the sole case cited by plaintiffs, *JSK Enterprises, Inc v City of Lacey*, 6 Wash App 43, 54-55; 492 P2d 600 (1971), to be unpersuasive because the case was decided before the United States Supreme Court decision in *Kisley*.

[9] There exists no legal basis for the Court of Appeals finding that the restrictions on opposite sex massage are "far too broad to be considered substantially related" to the government's interest in controlling prostitution. The United States Supreme Court has never "recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

Fourth Amendment's protection against searches conducted without warrants. The Court of Appeals determined that the administrative search exception to the warrant requirement is inapplicable under these circumstances because the massage parlor industry is not subject to pervasive regulation. We disagree.

While it is well established that the Fourth Amendment's prohibition of unreasonable searches and seizures applies to administrative inspections of private commercial property, an exemption from the search warrant requirement exists for administrative inspections of closely regulated industries.[10] *Donovan v Dewey*, 452 US 594, 602-603; 101 S Ct 2534; 69 L Ed 2d 262 (1981); *United States v Biswell*, 406 US 311; 92 S Ct 1593; 32 L Ed 2d 87 (1972); *Colonnade Catering Corp v United States*, 397 US 72; 90 S Ct 774; 25 L Ed 2d 60 (1970). Whether the exemption applies is primarily determined by " 'the pervasiveness and regular-

---

[10] As the dissent notes, this Court adopted the "pervasively regulated industry" exception to the warrant requirement of art 1, § 11 in *Tallman v Dep't of Natural Resources*, 421 Mich 585; 365 NW2d 724 (1984). In *Tallman*, this Court noted that the seven factors in the test it announced "differ only slightly from the five factors applied in the federal courts." *Id.* at 618. To be understood is that these two tests are essentially identical, although organized differently, i.e., there are seven factors in the Michigan version and five factors in the federal version. Thus, Michigan has adopted a "pervasively regulated industry" exception to art 1, § 11's warrant requirement that is essentially the same as the federal exception. Further, this Court has stated that "the Michigan Constitution should not be construed to provide greater remedy for search and seizure violations than the federal constitution unless there is a compelling reason to do so." *People v Champion*, 452 Mich 92, 97-98, n 3; 549 NW2d 849 (1996). Neither the parties nor the dissent offer any compelling reason why the Michigan Constitution should be construed differently than the federal constitution regarding the "pervasively regulated industry" exception to the warrant requirement. Accordingly, the United States Supreme Court authority, discussed below, regarding the precise issue before us—a local massage parlor inspection ordinance—conclusively resolves the issue here.

ity of the . . . regulation' and the effect of such regulation upon an owner's expectation of privacy." *New York v Burger*, 482 US 691, 701; 107 S Ct 2636; 96 L Ed 2d 601 (1987).[11] When a person chooses to engage in a "pervasively regulated business . . . he does so with the knowledge that his business . . . will be subject to effective inspection." *Biswell, supra* at 316. In part, the justification for this is that, unlike under general inspection schemes, the person in the pervasively regulated business "is not left to wonder about the purposes of the inspector or the limits of his task" as long as the regulations provide notice of and implicitly restrict the scope of the inspection to those areas of the business that must be examined to enforce the regulations. *Id.*; see also *Donovan, supra* at 603-604.

While regulation of massage parlors has not been as extensive as that of some other enterprises, such as the liquor or firearms industries, it has nonetheless been held to be a pervasively regulated industry. *Pollard v Cockrell*, 578 F2d 1002, 1014 (CA 5, 1978); *Kim v Dolch*, 173 Cal App 3d 736, 743; 219 Cal Rptr 248 (1985); see also anno: *Regulation of masseurs*, 17

---

[11] We are unpersuaded by plaintiffs' contention that there can be no finding that the massage parlor trade is a pervasively regulated industry in the absence of a history of regulation by the city of Ferndale. The United States Supreme Court expressly rejected an approach that relied exclusively on historical factors in *Donovan v Dewey, supra* at 606, stating that "if the length of regulation were the only criterion, absurd results would occur." Rather, "it is the pervasiveness and regularity of the . . . regulation that ultimately determines whether a warrant is necessary to render an inspection program reasonable under the Fourth Amendment." *Id.*; see also *New York v Burger, supra* at 701; *Tallman v Dep't of Natural Resources*, n 10, *supra* at 607. Moreover, the goal of the ordinance is primarily to prevent massage establishments from being used as a front for prostitution, which, as "the oldest profession," historically has been subject to pervasive regulation for perhaps longer than any other industry.

ALR2d 1183. In *Indianapolis v Wright, supra* at 478, the Indiana Supreme Court upheld a local massage parlor inspection ordinance similar to the one at issue in this case against a Fourth Amendment challenge.[12] After discussing federal case law relating to administrative inspections conducted pursuant to a licensing program, the court concluded that this was a pervasively regulated enterprise and that the massage parlor inspection scheme authorized by the ordinance was reasonable and permissible under the administrative search exception to the warrant requirement. *Id.* When appealed, the United States Supreme Court dismissed the appeal sub nom, *Wright v Indianapolis, supra,* for want of a substantial federal question. As noted in the preceding section, the Supreme Court's disposition of a case in this manner is a decision on the merits that is stare decisis with regard to the issues presented, including, of course, the question of pervasive regulation. *In re Apportionment of State Legislature—1992, supra* at 729; *Hicks, supra* at 344-345. Thus, we conclude that the United States Supreme Court has determined that the massage parlor industry is a pervasively regulated business and that inspections of massage parlors conducted without warrants pursuant to a comprehensive licensing and regulation ordinance are permissible under the administrative search exception to the warrant requirement of the Fourth Amendment.[13]

---

[12] The ordinance in that case provided that massage parlors and similar businesses "shall be open for inspection during all business hours and at other reasonable times by police officers, health and fire inspectors . . . upon the showing of proper credentials by such person." *Id.*

[13] In addition to conclusively resolving the question whether the massage parlor business is a "pervasively regulated industry," the Supreme Court's disposition of *Wright* also illustrates the error in the Court of

It is important to note that, while the Court of Appeals resolution of this issue turned solely on whether massage parlors are a pervasively regulated industry, the trial court found the inspection provision of the Ferndale ordinance constitutionally objectionable because, unlike the ordinance upheld in *Wright*, the Ferndale ordinance provides for criminal prosecution for refusing to permit inspections. Furthermore, the trial court held the ordinance to be constitutionally defective because it fails to expressly limit inspections to business hours or other reasonable times and does not expressly require that inspections be conducted in a reasonable manner. We shall address these distinctions in turn.

As a prelude to our discussion of the trial court's first ground for finding the ordinance constitutionally objectionable, namely, that it imposes criminal penalties, we note that the penalties imposed are not equivalent to a criminal prosecution under Michigan law. As we recently stated in *Huron Twp v City Disposal Systems, Inc*, 448 Mich 362, 365; 531 NW2d 153 (1995), "[t]his Court has long recognized that prosecutions for violations of ordinances are in a sense criminal, but that such violations are not criminal cases within the meaning of the statutes and rules for review by this Court."

However, even if the penalties imposed are considered criminal in nature, the United States Supreme Court has repeatedly held that an administrative regulatory scheme is not rendered constitutionally unreasonable because it imposes criminal penalties for

Appeals assumption that the industry must be regulated at the state level. Just as in the instant case, in *Indianapolis v Wright, supra* at 475, there was no state statute regulating massage parlors.

refusing to allow an administrative inspection without a warrant or for any other violation of the underlying law. *Burger, supra* at 712; *Biswell, supra* at 315; see also *Kim, supra* at 747. A business owner or employee's "decision to step aside and permit the inspection rather than face a criminal prosecution is analogous to a householder's acquiescence in a search pursuant to a warrant when the alternative is a possible criminal prosecution for refusing entry . . . ." *Biswell, supra* at 315. In *Burger, supra* at 712, the Supreme Court expressly recognized that social problems may be addressed "both by way of an administrative scheme and through penal sanctions." Plaintiffs have cited no case holding that the imposition of criminal penalties, by itself, is sufficient to invalidate an otherwise constitutional ordinance providing for administrative inspections of commercial property conducted pursuant to a comprehensive licensing program. Thus, the ordinance cannot be adjudged unconstitutional solely on the basis that criminal penalties are provided for its violation.

We now turn to the second constitutional infirmity identified by the trial court, the absence of an express reasonableness requirement. While it is true that ordinance § 7-265 does not state that inspections must be conducted in a reasonable manner or at a reasonable time, the trial court erred in its assumption that the city council intended to authorize unreasonable inspections. It is one of the oldest and most well-established tenets of our jurisprudence that legislative enactments enjoy a presumption of constitutionality. As this Court stated in *Brown v Shelby Twp*, 360 Mich 299, 309; 103 NW2d 612 (1960):

"The generally accepted rule is that a presumption
prevails in favor of the reasonableness and validity in all
particulars of a municipal ordinance unless the contrary is
shown by competent evidence, or appears on the face of
the enactment." [Quoting *Harrigan & Reid Co v Burton*,
224 Mich 564, 569; 195 NW 60 (1923).]

One of the reasons underlying this presumption is
that persons holding legislative office, such as mem-
bers of the city council, are duty-bound to act in con-
formity with their oaths to support the Michigan and
federal constitutions, just as are members of the judi-
ciary. *Marbury v Madison*, 5 US (1 Cranch) 137, 179-
180 (1803). As Justice Holmes put it, "it must be
remembered that legislatures are ultimate guardians
of the liberties and welfare of the people in quite as
great a degree as the courts." *Missouri, Kansas &
Texas R Co v May*, 194 US 267, 270; 24 S Ct 638; 48 L
Ed 971 (1904). Therefore, it cannot be assumed that
the city council members intended to violate their
civic trust; such an assumption impermissibly shifts
the burden of proof to the municipality. *Rental Prop-
erty Owners Ass'n, supra* at 253. Moreover, the oath
to uphold the constitution would be rendered mean-
ingless if legislators were required at every turn to
prove that they acted in conformance with it.

In addition to disregarding the presumption of con-
stitutionality, reading § 7-265 to authorize unreasona-
ble inspections is also inconsistent with the under-
standing that the words of the ordinance should trig-
ger. The ordinance says that inspections may only be
conducted "for the purposes of determining that the
provisions of this article are fully complied with."
This means, as interpreted in Michigan, that they are
to be done reasonably. In *Tallman v Dep't of Natural*

*Resources*, 421 Mich 585, 626-627; 365 NW2d 724 (1984), we found that the inspection statute at issue, which authorized inspections of fishing vessels "at any time," did not offend either the state or federal constitution because it was sufficiently limited by language stating that the inspections "must be deemed 'necessary' to carry out the provisions of the act." These limitations on the acceptable scope of an inspection assure the requirement that the action be reasonable. The same result obtains here, and we find that the inspection ordinance is, in like fashion, implicitly limited by its language restricting the scope of inspections to that necessary to determine compliance with the other provisions of the ordinance.[14]

A further reason this ordinance should be read as only permitting reasonable inspections is that an unreasonable inspection could not, as a matter of law, be one to which the licensee could be held to have consented. It is well established that administrative searches conducted without warrants are permissible in closely regulated industries because a licensee in such an industry is held to have impliedly consented to periodic inspections by applying for and obtaining a license. *Almeida-Sanchez v United States*, 413 US 266, 271; 93 S Ct 2535; 37 L Ed 2d 596 (1973); *Biswell, supra* at 316; *Wright, supra* at 478. However, the scope of the consent given extends only to reasonable inspections that are limited to that necessary to ensure compliance with the regulatory scheme. In

---

[14] The United States Supreme Court has repeatedly upheld inspection provisions conferring substantial discretion on inspectors in situations where, as in the instant case, "unannounced, even frequent, inspections are essential" to effective enforcement of a comprehensive and well-defined regulatory scheme. *Biswell, supra* at 316; see also *Donovan, supra* at 603; *Burger, supra* at 710-711.

*Tallman, supra* at 629, we stated unequivocally that no one "can be required to surrender . . . constitutionally protected rights in exchange for the privilege of doing business." Thus, because we must assume that the city council acted reasonably and constitutionally, with awareness of the existing law, it can only be concluded on this basis also that only reasonable inspections are authorized by § 7-265.

Finally, plaintiffs' claim that the ordinance is facially invalid as violative of the Fourth and Fourteenth Amendments of the federal constitution and art 1, §§ 11 and 17 of the Michigan Constitution is meritless. A legislative enactment can be held to be facially invalid only if there are no factual circumstances under which the provision could be constitutionally implemented. *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).[15] The trial court misunderstood this test by finding that, if circumstances could be conceived under which the ordinance would be unconstitutionally applied, then the ordinance must fall. This turns the test on its head. "The cardinal principle of statutory construction is to save and not to destroy." *NLRB v Jones & Laughlin Steel Corp*, 301 US 1, 30; 57 S Ct 615; 81 L Ed 893 (1937). Because there are circumstances under which the ordinance would be valid, namely, inspections conducted in a reasonable manner consistent with plaintiffs' Fourth Amendment rights, the

---

[15] Similarly, in *People v McQuillan*, 392 Mich 511, 536-537; 221 NW2d 569 (1974), we held that it is the court's duty to construe a statute "as constitutional unless the contrary clearly appears." In that case, a due process challenge was raised to a statute requiring that the defendants found not guilty by reason of insanity "be committed immediately." *Id.* This Court determined that the statute did not, on its face, violate due process because a hearing requirement could be inferred from the provision. *Id.*

test is met and the facial challenge to constitutionality fails.[16]

Therefore, because § 7-265 may be construed, consistent with constitutional protections, to permit periodic reasonable inspections for the purpose of determining compliance with the ordinance, we reverse the Court of Appeals decision finding the provision violative of the Fourth Amendment  of the United States Constitution.

V

In conclusion, we hold that the Ferndale massage parlor ordinance is constitutional in its entirety. As we have explained, the United States Supreme Court has repeatedly held that provisions restricting or prohibiting opposite sex massages do not offend the Equal Protection Clause of the federal constitution. Further, under these circumstances, the Michigan Constitution provides no greater protection than does its federal counterpart. Thus, the Court of Appeals erred in finding that the ordinance violated plaintiffs' equal protection rights.

We find that the administrative search exception to the warrant requirement is applicable in this case because the United States Supreme Court implicitly held that the massage parlor industry is subject to pervasive regulation in its dismissal of the appeal in *Wright, supra,* for want of a substantial federal question. The slight differences between the language of Ferndale Ordinance § 7-265 and similar inspection

---

[16] Moreover, plaintiffs cannot assert that the inspection provision of the ordinance is unconstitutional as applied. There is no evidence whatsoever in the record from which to conclude that the ordinance has been applied in an unconstitutional manner.

provisions upheld by the Supreme Court do not warrant finding a constitutional violation. Because we must construe the ordinance in a constitutional manner if possible, we read the ordinance as permitting periodic inspections that are conducted without warrants in a reasonable fashion solely for the purposes of determining compliance with the requirements of the ordinance. Consequently, the Court of Appeals decision is reversed.

MALLETT, C.J., and BRICKLEY, BOYLE, and WEAVER, JJ., concurred with TAYLOR, J.

CAVANAGH, J. (*concurring in part and dissenting in part*). I concur only in the result of the majority with respect to the equal protection issue. Current and future plenary review of this issue is precluded until the United States Supreme Court affords the issue plenary review. However, I agree with Justice Brennan's dissent in *Colorado Springs Amusement, Ltd v Rizzo*, 428 US 913; 96 S Ct 3228; 49 L Ed 2d 1221 (1976), that this Court should be able to review the merits of the equal protection argument. The merit of plaintiffs' argument is at the very least colorable after the United States Supreme Court decision in *JEB v Alabama ex rel TB*, 511 US 127; 114 S Ct 1419; 128 L Ed 2d 89 (1994), which recognized an equal protection violation even though members of both sexes were excluded from participating in the jury process on the basis of their gender.

As to the issue of search without a warrant, I concur with the reasoning and result of Justice KELLY.

KELLY, J. (*dissenting*). Today, without acknowledging the test adopted by this Court in *Tallman v Dep't of Natural Resources*,[1] and more importantly, without recognizing the independence of the state and its citizens and their ability to enact a constitution that gives them greater protection than the federal constitution, the Court abdicates its constitutional responsibility to undertake an independent analysis of its own state's constitution. The majority holds for the first time that United States Supreme Court precedent construing the Fourth Amendment is binding on this Court's interpretation of the Michigan Constitution, Const 1963, art 1, § 11.

Part III of the majority's opinion states that our Equal Protection Clause provides no greater protection than its federal counterpart. *Ante* at 714. Under that reasoning, United States Supreme Court precedent holding that a statute does not violate federal equal protection means that the statute is constitutional under the equal protection provision in our state constitution, as well. *Id.*

In part IV of the opinion, the majority extends this analysis to Const 1963, art 1, § 11, and the Fourth Amendment of the federal constitution:

> As noted in the preceding section, the Supreme Court's disposition of [*Wright v Indianapolis*[2]] in this manner is a decision on the merits that is stare decisis with regard to the issues presented, including, of course, the question of pervasive regulation. Thus, we conclude that the United States Supreme Court has determined that the massage parlor industry is a pervasively regulated business and that inspections of massage parlors conducted without warrants

---

[1] 421 Mich 585; 365 NW2d 724 (1984).

[2] 439 US 804; 99 S Ct 60; 58 L Ed 2d 97 (1978).

pursuant to a comprehensive licensing and regulation ordinance are permissible under the administrative search exception to the warrant requirement of the Fourth Amendment. [*Ante* at 717 (citations omitted).]

The United States Supreme Court dismissed *Wright v Indianapolis* for lack of a substantial federal question. It is error for this Court to hold that the dismissal in *Wright* prevents us from undertaking an independent analysis of the issues presented here under our own constitution. A finding that the massage parlor industry is pervasively regulated in Indiana does not dictate that regulation is pervasive in Michigan, or in any other state. It does not follow from the mere finding that an industry is pervasively regulated that warrantless searches of commercial premises used in that industry are constitutional under Michigan law. Finally, and most importantly, the Supreme Court's dismissal of *Wright* does not mean that § 7-265 of the Ferndale ordinance is permissible under art 1, § 11 of the state constitution.

The citizens of this state are protected from unreasonable searches and seizures by Const 1963, art 1, § 11, which provides:

The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.

This Court adopted the "pervasively regulated industry" exception to the warrant requirement of art 1, § 11 in *Tallman*. There, we fashioned a seven-part test to determine whether a provision for searches

without warrants satisfies the requirements of the Michigan Constitution.[3]

In *Tallman*, this Court made clear that, when examining a statute alleged to fit under the exception for searches without warrants, it will undertake an independent analysis. At issue there was a fish and game statute that provided for warrantless searches of commercial fishing vessels.[4]

In adopting the exception and applying it under the state constitution, the *Tallman* Court did not simply follow federal precedent. It undertook its own analysis, engaging in an extensive analysis of federal regulation of fishing and fisheries. The fact that several federal circuits had held that fishing was a pervasively regulated industry did not end the Court's inquiry. 421 Mich 608-613.

---

[3] *Id.* at 617-618. The Court explained:

We conclude that conflicts arising under art 1, § 11 of the Michigan Constitution between the enforcement needs of governmental agencies and the privacy interests of regulated commercial actors should be resolved by balancing the following factors:

(1) the existence of express statutory authorization for search or seizure;

(2) the importance of the governmental interest at stake;

(3) the pervasiveness and longevity of industry regulation;

(4) the inclusion of reasonable limitations on searches in statutes and regulations;

(5) the government's need for flexibility in the time, scope, and frequency of inspections in order to achieve reasonable levels of compliance;

(6) the degree of intrusion occasioned by a particular regulatory search; and

(7) the degree to which a business person may be said to have impliedly consented to warrantless searches as a condition of doing business, so that the search does not infringe upon reasonable expectations of privacy.

[4] MCL 308.1b(2)(e); MSA 13.1491(2)(2)(e).

Nor did the *Tallman* Court end its inquiry after turning to the regulations in several of our sister states and examining decisions holding administrative searches permissible under their constitutions. *Id.* at 613-616. Neither the federal precedent nor the decisions of our sister states commanded an identical result under our constitution.[5] Instead, the Court went on to examine both the history and scope of commercial fishing regulations within this state. At length, it decided that commercial fishing is a pervasively regulated industry in Michigan. *Id.* at 619-626.

In addition, merely finding the industry to be pervasively regulated did not end the Court's constitutional inquiry. In *Tallman*, the Court adopted a seven-factor test, only one of whose factors dealt with pervasive regulation. See note 3. The Court expressly noted that its test was different from the federal test.[6] But only after examining all seven factors did it conclude that the statute was constitutional under art 1, § 11. *Id.* at 618-630. In the years since, our state courts have used these seven factors to determine whether statutes and ordinances providing for searches without warrants satisfy the minimum requirements of the Michigan Constitution.[7]

In *Sitz v Dep't of State Police*,[8] this Court held that the protection of art 1, § 11 is not limited to that provided by the federal constitution. The Court recog-

---

[5] "[F]ederal and state cases provide guidance and persuasive authority for our adoption of the 'pervasively regulated industry' doctrine as the law of this state." *Id.* at 616-617.

[6] 421 Mich 618. "These seven factors differ only slightly from the five factors applied in the federal courts." *Id.*

[7] See, for example, *People v Pashigian*, 150 Mich App 97; 388 NW2d 259 (1986), and *People v Barnes*, 146 Mich App 37; 379 NW2d 464 (1985).

[8] 443 Mich 744; 506 NW2d 209 (1993).

nized that the expansion of art 1, § 11 should occur only when there are compelling reasons for it. However, we noted that

> "compelling reason" should not be understood as establishing a conclusive presumption artificially linking state constitutional interpretation to federal law. As illustrated by the question presented today, a literal application of the term would force us to ignore the jurisprudential history of this Court in favor of the analysis of the United States Supreme Court announced in *Sitz*.[9] Properly understood, the *Nash*[10] [compelling reason] rule compels neither the acceptance of federal interpretation nor its rejection. In each instance, what is required of this Court is a searching examination to discover what law "the people have made." [*Id.* at 758-759.]

A "searching examination" of art 1, § 11 is conspicuously absent from the majority opinion. Instead, it merely holds that federal precedent compels its conclusion, an approach *Sitz v Dep't of State Police* explicitly rejected. It is not obvious to me that compelling reasons exist to expand the section's coverage in this area. However, I am certain that the Court errs when it fails to undertake an independent analysis of the state's own constitutional provisions.

I would vacate the Court of Appeals opinion on this issue and remand to the trial court for application of the seven-factor test adopted in *Tallman*.

---

[9] *Michigan Dep't of State Police v Sitz*, 496 US 444; 110 S Ct 2481; 110 L Ed 2d 412 (1990).

[10] *People v Nash*, 418 Mich 196; 341 NW2d 439 (1983).