*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEER LAKE PROPERTY OWNERS
ASSOCIATION, FRED DARIS, MARIE DARIS,
GENE ENGLISH, LORRAINE ENGLISH,
RICHARD REMSTED, MARY ANN REMSTED,
FRANK STROTHER, MATTHEW ZABEL, and
ANDREA ZABEL,

        Plaintiffs-Appellants/Cross-
        Appellees,

v

INDEPENDENCE CHARTER TOWNSHIP, and
CHARTER TOWNSHIP OF INDEPENDENCE
PLANNING COMMISSION,

        Defendants-Appellees,

and

DEER LAKE KNOLLS HOMEOWNERS
ASSOCIATION,

        Intervening defendant-
        Appellee/Cross-Appellant.

UNPUBLISHED
October 10, 2019

No. 343965
Oakland Circuit Court
LC No. 2017-159031-AV

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

        Plaintiffs Deer Lake Property Owners Association, Fred Daris, Marie Daris, Gene English, Lorraine English, Richard Remsted, Mary Ann Remsted, Frank Strother, Matthew Zabel, and Andrea Zabel (hereinafter collectively referred to as the "Property Owners"), appeal as of right from an Oakland Circuit Court opinion and order denying the Property Owners'

-1-

motion for declaratory judgment, and affirming defendant Independence Township Planning Commission's[1] decision to grant a special land use permit ("SLUP") to Deer Lake Knolls Homeowners Association ( the "Knolls"). The SLUP allows the Knolls to dock up to 10 boats on four seasonal docks on a 5.02 acre lakefront lot (the "outlot") owned by the Knolls.

There are three issues on appeal: (1) whether the Commission had the legal authority to issue the SLUP; (2) whether the Commission's decision to issue the SLUP was supported by competent, material, and substantial evidence; and (3) whether the Property Owners are an aggrieved party. We affirm on all issues.

## I. BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a dispute over lakeshore access between two homeowners associations. Deer Lake is a public access lake with a public boat launch. The Property Owners are an association of approximately 70 riparian,[2] lakefront homeowners. The Knolls includes 27 lots, three of which are lakefront, and 24 are backlots. The Knolls owns the outlot which provides keyhole access[3] to the lake, and where Knolls erects seasonal docks. The Property Owners contend that the access and the additional docks increase boat traffic and create dangerously overcrowded conditions. This led to litigation that has spanned over five years, multiple courts, the township zoning board, the Commission, and an administrative appeal.

The township granted the Knolls a nonconforming validation certificate ("NVC") to erect on the outlot two season docks which moor four boats. The Knolls appealed that decision,[4] but the Property Owners declined to challenge that appeal, and while it was pending, the Knolls obtained the SLUP which allows for overnight mooring of up to 10 boats on four seasonal docks on the outlot. It is the SLUP decision that is at issue in this case.

---

[1] Hereinafter defendant-appellees Charter Township of Independence and its Planning Commission are collectively referred to as "Independence." Where appropriate to differentiate between the two, the Charter Township of Independence is referred to as the "township" and the Charter Township of Independence Planning Commission is referred to as the "Commission."

[2] To be precise, "land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *2000 Baum Family Tr v Babel*, 488 Mich 136, 138 n 1; 793 NW2d 633 (2010) (citation omitted). "However, the term 'riparian' is often used to describe both types of land," and will be used in such a manner herein. *Id.* (internal quotation marks and citation omitted).

[3] Keyhole water access is "[t]he use of property that adjoins or extends into a lake for water access by owners or occupants of other property that does not adjoin or extend into a lake." Charter Township of Independence Zoning Ordinance Article 2, §2.02. Water access is "[t]he launching, mooring and/or docking of watercraft." Article 2, §2.02.

[4] That case was dismissed by stipulation, subject to the conditions stated in the consent order, which permits the Knolls to reinstate the matter after the instant appeal is concluded.

Prior to approval of the SLUP, the Commission held a public hearing. The hearing lasted nearly two hours, during which the Commission heard arguments from the attorneys for the Knolls and the Property Owners, heard concerns from local residents and members of the Knolls who had conflicting reports regarding overcrowding, safety, aesthetics, environmental impact, and the necessity of a permit from the Michigan Department of Environmental Quality ("MDEQ"). The Commission also considered the Knolls' application and supplemental application for the SLUP along with their attached documents which included the outlot property description, overall site plan, defined site plan, lake depth information, the NVC, the vesting deed, the Knolls' original and current by-laws, the outlot by-laws and additional restrictions, materials relating to the appeal to the zoning board, the Property Owners' by-laws, and the 1987 Deer Lake Study. Before the meeting, the Commission also received:

- a letter from resident Dr. Derrick Fries, a claimed "International Boating/Safety Expert," asserting that the SLUP posed no safety risk to marine traffic and boaters;

- a memo and supplemental memo from the township planning consultant Richard Carlisle recommending special use approval to allow up to six boats and three docks;

- a letter from Gregory Need on behalf of the Property Owners advocating that 10 boats would create a safety issue and would materially impact lake usage by the riparian owners, and that the docks would create aesthetic issues, and therefore, the NVC limit was more appropriate;

- a report, circa 2013, by Fred Daris, a Property Owners member, compiled from 11 publications purporting that Deer Lake was over its carrying capacity; and

- an email from Norm Froeschke, a resident, expressing concerns over Carlisle's report.

The minutes from the public hearing show that the Commission also considered aerial photographs of the lake and historical documentation regarding the Knolls' use of the property. After the hearing was closed to the public, the Commission discussed the ordinance as it relates to lake frontage, whether a MDEQ permit would be required, the aerial photographs of the lake with regard to the aesthetic impact and placement of the docks, alternative remedies for safety concerns, the impact that the mooring of a few additional boats could have on overcrowding, whether the ordinance concerned future development rather than correcting current conditions, and the limited precedential effect of the SLUP. The Commission unanimously approved the SLUP and placed its findings on the record.

The Property Owners appealed the Commission's decision to the circuit court and the Knolls joined as an intervening party. The Property Owners argued that the Commission's decision failed to comply with state law, was not based on proper procedure, and was not supported by competent, material, and substantial evidence on the record, and thus amounted to an abuse of discretion. The Property Owners also argued that the Commission's decision violated MCL 125.3508, that the outlot did not qualify for special land use approval, and that the only credible evidence presented weighed against granting the SLUP. The Property Owners theorized that the seasonal docks constituted a "marina" which required permitting by the MDEQ pursuant to various provisions of Michigan's Natural Resources and Environmental Protection Act ("NREPA"), and created nuisance conditions for neighboring property owners.

The Property Owners requested a stay to prevent construction of the seasonal docks until the instant appeal was resolved.

The circuit court affirmed the Commission's approval of the SLUP and dismissed the Property Owners' appeal. In its opinion and order, circuit court denied the Property Owners' motion for declaratory judgment, [5] reasoning that the Property Owners' argument that the SLUP was an unlawful expansion of a nonconforming use was a challenge to the NVC, which the Property Owners had not raised before the Commission nor challenged on appeal. Thus, the issue regarding the NVC was not properly before the circuit court. The circuit court further held that the Commission's issuance of the SLUP conformed to Michigan's statutory and constitutional provisions and was appropriately considered under Articles 7 and 11 of the township's zoning ordinance. The decision was based on proper procedure as the Commission gave notice of the public hearing, the Property Owners had an opportunity to present their comments and concerns, the Property Owners were able to submit documents and evidence in support of their position prior to the public hearing, and the Property Owners' counsel attended the hearing.

The circuit court also found that the SLUP decision was supported by competent, material, and substantial evidence because the record reflected that the Commission "discussed the application at length, listened to public comment, asked questions, engaged in dialogue, and conscientiously deliberated. Both sides presented evidence in support of their positions, and it appear[ed] that all evidence was considered." The circuit court said that this demonstrated that the Commission "considered the required factors, the safety of property owners and the public, aesthetics, traffic, natural resources, nuisance conditions, the impact of the proposal on surrounding land uses, and the like, it made a decision that was always going to be unpopular with one side." The parties then appealed.

## II. UNLAWFUL EXPANSION OF THE NVC

The Property Owners argue that the Commission lacked authority to issue the SLUP because (1) the Knolls' proposed use of the outlot as a private marina unlawfully expanded it to a nonconforming use, and (2) the outlot does not qualify for the special land use process set forth in zoning ordinance Section 11.08. We disagree.

---

[5] The circuit court's ruling on the declaratory judgment is not challenged here. However, the circuit court reasoned that, although the Property Owners moved under the proper court rule (MCR 2.605 which governs declaratory relief), what it actually was seeking was a temporary stay pending resolution of the issue of whether a MDEQ permit was required to install the docks. The circuit court characterized it as an injunction and noted that the Property Owners did not cite or argue the appropriate standard. The circuit court went on to find that the Property Owners were not likely to succeed on the merits (the only injunction factor discussed in its motion). The Property Owners' nuisance claim based on MDEQ permitting was premature and that, contrary to Property Owners' assertion, seasonal docking structures did not constitute a marina under NREPA anyway.

-4-

This Court reviews zoning decisions de novo. *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011). Courts must affirm a zoning decision unless it is contrary to law, based on improper procedure, unsupported by competent, material, and substantial evidence on the record, or was an abuse of discretion. *Id*. The interpretation of a zoning ordinance presents a question of law subject to review de novo. *Gora v Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998).

The rules of statutory construction apply to the interpretation of municipal ordinances. *Gora*, 456 Mich at 711. As a general rule courts should defer to the interpretation of the statute by the administrative agency which is legislatively charged with enforcing it. *Ford Motor Co v Bruce Township*, 264 Mich App 1, 7; 689 NW2d 764 (2004). However, where the language used in the zoning ordinance is clear, the ordinance must be enforced as written. *Kalinoff v Columbus Twp*, 214 Mich App 7, 10–11; 542 NW2d 276 (1995). If reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). Where specific definitions are not provided, "terms used in an ordinance must be given their plain and ordinary meanings." *Great Lakes Soc v Georgetown Charter Twp*, 281 Mich App 396, 408; 761 NW2d 371 (2008).

The Lake Access Regulations established under Section 11.08 of the Charter Township of Independence zoning ordinance states:

> B. Keyhole Water Access Prohibited. Keyhole water access shall be prohibited, except as may be permitted and approved under subsections C. and D. below.

> C. Special Land Use Approval for Private Access Property.

> 1. In any zoning district where a parcel of land is contiguous to a lake, special land use approval under Article 7.0 of this Zoning Ordinance is required, except as specifically exempted in subsections 2 and 3, below, to use all or any portion of such parcel as private access property.

> 2. Special land use approval is not required for property for the sole purpose of swimming and/or day usage.

> 3. Special land use approval is not required for direct water access from individual parcels occupied as a single family residence.

Section 2.02 defines a number of relevant terms, including "private access property," as "[a] site that is directly adjoined to and part of a single-family residential subdivision or condominium development and under the jurisdiction of a condominium association or subdivision association, which site is used, or proposed to be used, to provide water access exclusively to owners or occupants of residential units within the subdivision or condominium association."

The Property Owners contend that the statute requires that the outlot must be a "private access property" in order to qualify for the SLUP, and that the Knolls' outlot does not qualify because the Knolls is not a "condominium association or subdivision association." As the circuit

-5-

court correctly analyzed, the Property Owners' interpretation transposes the words of the ordinance. Section 11.08(C)(1) does not require that a parcel qualify as a "private access property," but merely requires an SLUP to use the outlot as such.

The Property Owners next argue that the SLUP is an unlawful expansion of the NVC, in violation of MCL 125.3208(2), which states in relevant part that a "legislative body may provide in a zoning ordinance for the completion, resumption, restoration, reconstruction, extension, or substitution of nonconforming uses or structures upon terms and conditions provided in the zoning ordinance."

"[O]ne of the goals of local zoning is the gradual elimination of nonconforming uses." *Century Cellunet of Southern Mich Cellular, Ltd Partnership v Summit Twp*, 250 Mich App 543, 546; 655 NW2d 245 (2002). "A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance" and "[a] zoning ordinance cannot operate to oust the property owner of his vested right even though the ordinance is reasonable." *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 573–574; 398 NW2d 393 (1986) (quotation marks omitted). However, the expansion of a prior nonconforming use is generally not permitted. *Edw C Levy Co*, 293 Mich App at 342.

The Knolls challenged the NVC decision in the circuit court but that challenge was dismissed by stipulation subject to reinstatement following the conclusion of the instant SLUP matter. Because the proceedings in this case are focused on the SLUP, the factual question of whether or not the SLUP decision effectively expands the NVC is not properly before this Court. Nor did the unanswered NVC issue present a valid reason for denial of the SLUP. See Salkin, *Abandonment, Discontinuance and Amortization of Nonconforming Uses: Lessons for Drafters of Zoning Regulations*, 38 Real Est LJ 486, 496 (2010) ("Once the special use permit is granted, it becomes the operative document regarding the permitted uses of the property, and the use of the property is no longer considered a nonconforming use . . . ."). Thus, the Commission had authority to issue the SLUP as the outlot, even with the NVC, qualified for the special land use process set forth in Section 11.08.

III. COMPETENT, MATERIAL, SUBSTANTIAL EVIDENCE

The Property Owners next argue that the SLUP decision was not supported by competent, material, and substantial evidence because the evidence that the Commission relied on was anecdotal and conjectural. They also contend that the Commission ignored the following evidence: (1) the report by Fred Daris that the lake is already overcrowded, (2) testimony from several riparian property owners regarding the impact that overcrowding has on their use and enjoyment of the lake, and (3) the Carlisle's report recommending no more than six boats and two docks. We disagree.

We stated in *Edw C Levy Co*, 293 Mich App at 340–41:

"Substantial evidence" is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance. Under the substantial-evidence test, the circuit court's review is not de novo and the court is

not permitted to draw its own conclusions from the evidence presented to the administrative body. Courts must give deference to an agency's findings of fact. When there is substantial evidence, a reviewing court must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result. A court may not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record. [Internal quotation marks, footnotes, and citations omitted.]

Prior to approval of the SLUP, the Commission held a public hearing on the matter, and considered evidence from all the stakeholders. The minutes indicate that the Commission received historical documentation regarding past use of the outlot in addition to public comments and anecdotes supporting both the Knolls and the Property Owners. The Commission inferred from this evidence that, based on the Knolls' history of self-policing and restraint, granting the SLUP would be appropriate under the standards listed in Section 7.03(g). The fact that some of the evidence was anecdotal is not surprising because the hearing was open for public comments, and the Property Owners give no reason why the Commission could not consider such evidence. *Hughes v Almena Twp*, 284 Mich App 50, 73; 771 NW2d 453 (2009) ("A local land use agency may properly consider relevant public comments as evidence."). Additionally, the Commission had to engage in speculation in order to consider potential future effects of the SLUP. Therefore, consideration of the outlot by-laws and the site plan, which disclosed how the outlot would be used, was relevant.

The minutes show that the Commission engaged in lengthy discussions regarding the safety issues raised by Daris and the riparian owners, and questioned Carlisle at length and discussed his report. The Commission did not ignore this evidence; rather, it considered it at length and still decided to issue the SLUP anyway.

In essence, the Property Owners are requesting that this Court consider the same evidence but draw a different conclusion. We decline to do so, as our role is to determine only whether the Commission's decision is supported by competent, material, and substantial evidence on the record, which we find it was. *Edw C Levy Co*, 293 Mich App at 340–41 ("A court may not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record.").

## IV. AGGRIEVED PARTY

The Knolls argues that the circuit court committed error requiring reversal when it found that the Property Owners are an aggrieved party because there is no evidence that the Knolls' docking will harm it in any way, let alone evidence that the docking will cause harm to it that is distinct from that of the general public who also use the public lake. We disagree.

The question whether a party has standing is a question of law that this Court reviews de novo. *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 734–736, 629 NW2d 900 (2001). As this Court noted in *Olsen*, "standing" in a case involving an appeal from a zoning decision is governed by MCL 125.3605, which permits appeals to the circuit court by an "aggrieved party." *Olsen v Chikaming Twp*, 325 Mich App 170, 180-181; 924 NW2d 889 (2018). Thus, the proper

question is not whether Property Owners have "standing" but whether it is a "party aggrieved by the [SLUP] decision." See *id*. This Court stated:

> Incidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes are insufficient to show that a party is aggrieved. See [*Unger v Forest Home Twp*, 65 Mich App 614, 617; 237 NW2d 582 (1975); *Joseph v Grand Blanc Twp*, 5 Mich App 566, 571; 147 NW2d 458 (1967)]. Instead, there must be a unique harm, dissimilar from the effect that other similarly situated property owners may experience. See [*Western Mich Univ Bd of Trustees v Brink*, 81 Mich App 99, 103 n 1; 265 NW2d 56 (1978)]. Moreover, mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved, *Village of Franklin*, [101 Mich App at 557–558], as is the mere entitlement to notice, *Brink*, [81 Mich App at 102–103]. [*Id*. at 185.]

The circuit court found that the Property Owners had alleged more than simply their status as lakefront property owners and so had standing based on *Higgins Lake Property Owners Assn v Gerrish Twp*, 255 Mich App 83, 91; 662 NW2d 387 (2003). In *Higgins Lake*, this Court found that a similarly-situated set of property owners and their association had standing, explaining:

> The HLPOA is a nonprofit corporation whose members are primarily lakefront property owners. The purpose of the HLPOA is to protect the lake, the watershed, and the interests of its members. The HLPOA asserts that the alleged overuse of, and concentration of persons and watercraft, at the road ends is affecting its members' enjoyment of the lake as well as their property values. Accordingly, the HLPOA has standing to sue as a nonprofit membership organization litigating to vindicate the interest of its members. [255 Mich App 91.]

The Knolls argues that *Higgins Lake* is factually distinguishable because it concerned the issue of whether a homeowners association had standing as a nonprofit, not whether it had alleged harm sufficiently. At issue in that case was the scope of the public's right to use road ends on Higgins Lake. *Higgins Lake*, 255 Mich App at 88. The subdivision plats dedicated the streets and alleys "to the use of the public" and backlot owners used the road ends for "lounging, sunbathing, and picnicking," as well as mooring boats and placing boat hoists at the road ends. *Id*. The plaintiffs argued that these activities exceeded the scope of the dedication and that the dedication was limited to access only while the defendants presented evidence of the traditional and historical uses of the road ends, which included sunbathing, picnicking, lounging, and boat mooring for many years. *Id*. at 89, 92. This Court concluded that the association had standing, where it had "alleged overuse of, and concentration of persons and watercraft, at the road ends [affected] its members' enjoyment of the lake as well as their property values." *Id*. at 91.

The Knolls argues that the Property Owners failed to allege harm sufficient to meet this standard. Although overburdening is a generalized harm that is not directly tied to the SLUP decision, the other alleged harms of affected property values, and aesthetic and environmental impacts are sufficiently pleaded. While "[i]ncidental inconveniences such as . . . general

aesthetic and economic losses, population increases, or common environmental changes are insufficient to show that a party is aggrieved," *Olsen*, 325 Mich App at 185, the Property Owners pleaded more than mere generalized harms. In particular, the Property Owners alleged that the additional docks may disrupt or destroy the shoreline and its ecosystem. As riparian owners who share this shoreline, they have an interest beyond that of other lake users, the public at large, or even similarly situated neighbors. Moreover, the Property Owners are more likely to be affected by these additions and line of sight alterations than the public, or other lake users, by virtue of their proximity to the outlot and the situation of its members respective properties in relation to the outlot. Accordingly, the Property Owners are an "aggrieved party."

## V. CONCLUSION

The circuit court correctly concluded that the Commission had the authority to issue the SLUP, that its decision was supported by competent, material, and substantial evidence on the record, and that Property Owners are an aggrieved party.

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron